Hill *v.* Lord.

---

### GRANVILLE L. HILL *versus* DANIEL W. LORD.

Ancient deeds of lands, of which the grantee entered into possession, are to be upheld, although defective in form or execution; and the same rule may be applied to wills and levies of executions, to some extent.

The principle of law, that a deed of land adjoining a stream or body of water carries with it adjoining flats, applies to islands as well as to the mainland, and to conveyances made after as well as before the colonial ordinance of 1641.

A reservation in a deed, saving to the public any right they may have to take seaweed from the premises, confers no rights upon any one having no other title.

Permission by the land owner to certain persons to cross his land and take seaweed therefrom, without proof of a deed, cannot avail other persons, long after his decease, against subsequent purchasers of the land.

The right to take seaweed may be conveyed by the owner of an estate, without conveying the soil, even of the flats, or it may be acquired by prescription.

But, if a corporation claim a prescriptive right, it must be shown by corporate acts, regulating the right or exercising control over it. Acts of the corpora-

tion, declaring the premises forever common for the use of the inhabitants, or surveying a lot to one who did not subsequently go into possession of it, or laying out a road to the premises, are not such acts as would prove a prescriptive right.

The *inhabitants* of a town cannot acquire, by prescription, a right to take seaweed, for there could arise no presumption of a grant, as an inhabitant cannot purchase for himself and his successors.

The inhabitants of a town may acquire by *custom* an *easement*, but not an interest in the land, or right to take a profit from it.

The right to take seaweed from the land or beach of another, is not an easement, but a right to take a profit in the soil, and cannot be acquired by *custom.*

On Report of the evidence by Rice, J.

*Trespass quare clausum,* to recover damages for breaking and entering the plaintiff's close in Kennebunkport, called Vaughan's Island, and carrying away seaweed, &c. Plea the general issue, with a brief statement setting forth various grounds of defence, which will be found enumerated in the opinion of the Court.

The plaintiff introduced a grant from Charles I, King of England, to Ferdinando Gorges, dated in 1640; a deed from F. Gorges to Thomas Gorges, dated July 18, 1643; and various subsequent deeds, wills and other documents, tending to show title to the *locus in quo* in himself.

The plaintiff testified that, in 1854 or 1855, he forbade the defendant taking seaweed from the island; and he introduced witnesses who testified that, in 1855 and 1856, the defendant employed persons to haul seaweed therefrom.

The defendant introduced testimony, tending to prove that seaweed is brought upon the island by the tide, and is frequently carried away by the next tide; that it does not form soil, or become a part of the beach or sea-wall, but, if left to dry, is carried away by the wind; and that, in 1800, Capt. Ebenezer Perkins, who then owned the neighboring farm, gave timber to build a bridge to the island, and many others aided in building it, for the purpose of hauling seaweed from the island for manure.

After this testimony was introduced, the parties agreed that the case should be reported, including such portions of the

evidence in the case of *Hill* v. *Cluff*, tried in this Court at the April term, 1857, as might be relevant; and the parties admitted, for the purposes of this trial, that, for more than seventy years, all persons "living in Kennebunkport and elsewhere," had hauled seaweed at pleasure from the *locus in quo*, until forbidden in 1854 or 1855 by the present plaintiff. And the plaintiff waived his right to recover damages of the defendant for injury to the soil, if the law and evidence will sustain a custom for the inhabitants to take and carry away seaweed.

From the evidence in the case of *Hill* v. *Cluff*, the following were selected and introduced by the defendant:— Copy from the town records of Kennebunkport of a grant of fifty acres of land, by said town, to Bezaleel Getchell, March 23, 1721, and of a location in pursuance thereof, by Brown and Huff, in 1723, of twenty acres, on Palmer's Island, on account of James Mussey. Copy of vote of said town, February 17, 1723–4, that all islands in Arundel shall remain common to perpetuity. Copy of records of proceedings of said town in 1803, as to a way from James Huff's house to the town road near Capt. Ebenezer Perkins' house. Copy of proceedings of said town, in 1841, in the location and acceptance of a way to Turbet's creek, from the road leading to Theodore Cleaves', near whortleberry swamp. Also a large number of depositions tending to prove the common custom of the inhabitants to haul seaweed from the island called Vaughan's (or Palmer's) and that the practice was allowed by the occupants of the farm to which it is claimed that the island belonged.

*T. M. Hayes*, for the plaintiff.

1. The plaintiff has title to the island. Under this head, the counsel reviewed and commented upon the several deeds, grants and other instruments put in by the plaintiff. His title extends to low water mark. Colony Law, c. 63, § 3. Seaweed belongs to the owner of the soil. Angell on Tidewaters, 262, *ut seq.; Moore* v. *Griffin*, 9 Shep., 350; *Phillips* v. *Rhodes*, 7 Met., 322; *Emans* v. *Turnbull*, 2 Johns., 313; Colony Law, c. 63, § 23.

2. The defendant has trespassed as alleged by the plaintiff.

The defendant's first position in defence is, that the *locus in quo* is the property of the town of Kennebunkport.

This is negatived by the plaintiff's proof of title. The title to the island and to the farm on the mainland have always gone together, and been included in the same deed until 1847. The town never exercised any ownership. There is no evidence of any corporate acts claiming ownership. The vote declaring the islands common, was not passed until the year after Mussey's location. Constant trespasses by the inhabitants could give the town no title. *Green* v. *Chelsea*, 24 Pick., 71. No title was gained by the location to Mussey, as he never claimed under it.

As to the second claim of the defendant, a prescriptive right in the town of entering on the *locus in quo*, and hauling away seaweed. There is no evidence of any corporate acts by which such a right could be acquired.

The position that the "public" have acquired a right of this kind by *custom*, is too general, vague, uncertain and unreasonable to be supported.

The claim that there was an ancient deed, now *lost*, is likewise too vague and uncertain, giving no names of parties, nor date of commencement. 3 Chitty's Pleadings, 1122. A lost deed may be presumed, where a great number of circumstances concur to raise a presumption. *Valentine* v. *Piper*, 22 Pick., 93. But, although a jury *may* presume a deed in such case, it is optional and not imperative. *Livett* v. *Wilson*, 3 Bing., 115. In this case, there are many circumstances inconsistent with such a deed.

The fifth claim of the defendant is to a right in himself by virtue of a *que* estate. He claims a right to take a profit in the *locus in quo*, by taking and carrying away seaweed therefrom. There is testimony to show that seaweed, instead of drifting to Vaughan's island from distant places, grows on its soil and in its immediate vicinity. It is thus as much a crop of the plaintiff as the herbage on his uplands.

A right to take a profit in another's soil cannot be acquired

by prescription in this State. In this connection, the counsel discussed the law as to incorporeal hereditaments, citing 2 Blackstone's Com., 21.; *Wolf* v. *Frost*, 4 Sanf. Ch. R., 72; *Littlefield* v. *Maxwell*, 31 Maine, 134; 3 Blackstone, 32, 403; Greenleaf's Cruise, tit. 23, § 1 and note; *Clayton* v. *Corby*, 5 A. & E., 415; *Wilson* v. *Willis*, 7 East, 121; *Blewett* v. *Tregonning*, 3 A. & E., 550; 1 Greenl. Cruise, 71; 1 Smith's Leading Cases, 331, note *f.* Commenting on these authorities, the counsel argued that the right of *common*, known to English law, has no existence in this country.

The sixth position of the defendant is, that there is a custom for every inhabitant of Kennebunkport to take seaweed on the island, and carry it away at pleasure. If such a custom is good in law, the defence must prevail. Acts sufficient can be proved and admitted, to establish such a custom, if it is a legal defence.

1. A custom to take a profit in another's land, has been uniformly held to be bad. *Waters* v. *Lilly*, 4 Pick., 145; *Perley* v. *Langley*, 7 N. H., 233; *Littlefield* v. *Maxwell*, 31 Maine, 134.

2. Such a custom is unreasonable and uncertain. *Race* v. *Ward*, 4 Ellis & Blackburn, 702.

The seventh position of the defendant is, that he was justified by a license by Ebenezer Perkins, claiming to own the island, given by deed to the inhabitants of the town, to take and carry away seaweed, &c.

1. A license from a person *claiming title* is of no value.

2. Evidence shows that Perkins had not the whole title, he only owning one half, which gave him no power to incumber the whole.

3. No deed is shown, nor is its non-production accounted for.

If it was a parol license, it was revoked by the death of the alleged grantor. *Cook* v. *Stearns*, 11 Mass. 533; 2 Am. Leading Cases, 677; *Stevens* v. *Stevens*, 11 Met., 251. And by conveyance from Mrs. Eunice Perkins, the owner of the other half, to Horace Porter.

The vote of the town relied upon, laying out a town way, on condition that the inhabitants may pass through Perkins' land to the sea to haul seaweed, and that Perkins work out his highway tax on said road for ten years, in effect limits the right of passage to ten years. Besides, the town way could have been discontinued, and the license must be revocable; the town could not legally locate a road upon such conditions; and this was not a license to take seaweed, but a license to cross Perkins' land.

*Bourne,* and *Howard & Strout,* for the defendant, argued that the plaintiff failed to show title to the island. The deeds introduced by him do not contain any description by which this particular island can be identified. The counsel then reviewed and commented on the various conveyances introduced by the plaintiff. If Vaughan, under whom the plaintiff claims, ever had a valid title, he abandoned it in the time of the Indian wars, and the town resumed the ownership. The records of the town for 1723, contain a vote that all the islands shall lie "common forever." This vote was placed on the records, and must have been known to all the inhabitants, and the evidence shows that, from that time, all the acts of the inhabitants indicated an uninterrupted claim of right. The same year the island was "laid out" by the town to James Mussey, and the location returned and recorded in the usual mode. At this late day, it is to be presumed that the location was accepted and ratified by the town. The location embraced but about 50 acres, and not the whole island, and does not militate against the remainder of the island remaining common. The location made was covered with woods in part, and in part meadow, leaving ample room for the inhabitants to take seaweed. It is admitted that the practice has been for 70 years for the inhabitants to take seaweed. The proceedings with regard to the Perkins road tend to show a contract between him and the town, that he was to keep the road in repair ten years, and the inhabitants were to cross his farm to obtain seaweed. Perkins did not

Hill *v.* Lord.

claim the island; but it is evident that the town did. What other motive had they for laying out a road?

In 1841, the town laid out another town way across the same farm towards this island, evidently for the purpose of aiding the inhabitants in obtaining seaweed from the island.

The evidence shows that Eunice Perkins admitted the right of the inhabitants to obtain seaweed from the island.

The counsel proceeded to point out various defective links in the plaintiff's chain of title, which he contended were fatal.

2. If the plaintiff has established any title to the island, it does not follow that he owns the flats. The colonial ordinance of 1641 does not aid him, as it applies, by fair interpretation, only to titles then existing. *Rust* v. *Boston Mill Dam Corp.*, 6 Pick., 158. The plaintiff does not show any evidence of title so early as 1641.

The counsel further argued that the ordinance was not intended to, and did not, include islands.

The counsel then proceeded to discuss the law as to the rights of the defendant by prescription or custom.

The question whether seaweed thrown on the land or beach is a part of the soil, is a question of fact for the jury, and not of law for the Court. The evidence in this case shows, that seaweed adds no strength to the sea-wall, nor does it make the beach on which it is cast more compact or enduring. The doctrine in *Emans* v. *Turnbull*, 2 Johns., 313, that seaweed belongs to the owner of the land, is not objectionable; but, when it is said by the Court, that it affords an increase or accumulation to the soil, and a protection to the bank, that is a question of fact, and not a matter of law. Every thing on the land belongs to the owner, until some one shows a better title; but every thing on the land is not a *part* of the land. Apples, hay, wood and vegetation of every kind, were never so regarded, after being separated from the parent stock. Manure made on a farm goes with the farm; that made at a livery stable does not go with it.

Every thing which may pass by deed, may be the subject of prescription. Prescriptions which involve a common good,

are favored more than others,—as, a right to dig for coal, for masters of vessels to dig for and carry away ballast, to dig for gravel on adjoining land to repair a highway, or to pull down houses to prevent a great fire spreading. It seems scarcely necessary to argue that the right to take seaweed may be acquired in the same manner. No one can doubt that it can be the subject of grant. *Phillips* v. *Rhodes*, 7 Met. 322.

If seaweed cast on Vaughan's island, for the ages past, had produced the imagined increase, the island might have been large enough for a kingdom. But such increase is no part of its mission. It is a fertilizer, and, as such, is important to the agriculturist, especially on the seaboard, where, owing to the varied pursuits carried on, the portion of land allotted to each person is small, and manures cannot be produced or procured as in the interior. We say, then, that a prescription or custom to obtain seaweed, is in the highest degree reasonable and necessary to the interests of the community. The long continued habit of taking seaweed is good evidence of a prescriptive right to do so. *Sales* v. *Pratt*, 19 Pick., 41; 1 Dane's Abr., 535; *Knowles* v. *Dow*, 2 Foster, 388.

The counsel then discussed the question, who can have the enjoyment of the right by custom or prescription, and argued that the town, in its corporate capacity, could do so, for the benefit of all its inhabitants. The case of *Littlefield* v. *Maxwell*, 31 Maine, 134, was decided on the ground that *inhabitants* of a town could not acquire a right in another's soil, because they have no certain continuance. So of the cases cited in *Littlefield* v. *Maxwell*. But the permanency of a corporation endows it with the same capabilities as the owner of a *que* estate. In the case of *Sales* v. *Pratt*, 19 Pick., 41, there was a failure for want of proof of any corporate action. The relation of town resembles very much that of the owner of a *que* estate. It has a qualified interest in all the lands in its borders, and it is for its advantage to have it made as profitable as it can be.

The counsel then proceeded to argue, from the evidence in

Hill *v.* Lord.

the case, that a custom had been shown for the inhabitants of Kennebunkport to take seaweed from Vaughan's island, and that it had all the elements of a custom good in law, being immemorial, uninterrupted, undisputed, reasonable and certain.

Every land owner has a right to turn his lands common, and does so whenever their produce will not pay the expense of inclosure. In such a case, any one may let his cattle run on them, and consume anything there growing, and no action of trespass will lie. This law comes to the aid of the defendant. The land on the island, seaward from the road, has always been common, and is so barren and exposed that it must be common forever.

The right to take seaweed, as claimed by the defendant, is of immeasurable importance in this and other States. It has always been considered and treated as a common right. It will be perceived that the defendant justifies under an original right common to all, as well as under grant, custom and prescription.

The opinion of the Court was drawn up by

DAVIS, J.—This is an action of trespass *quare clausam*, to recover the value of a quantity of seaweed taken by the defendant from the shore of Vaughan's Island, in the town of Kennebunkport. The defendant admits the taking, and justifies under several pleas, which will be separately considered.

1. The first plea alleges that, at the time of the taking, the title to Vaughan's Island was in the town of Kennebunkport, and not in the plaintiff; and that the defendant, as one of the inhabitants, entered thereon and took the seaweed by the permission of the town.

Without going into a minute analysis of the testimony, it is sufficient for us to say that the evidence fails to prove such title in the town. No deed is produced; nor copy of any deed; nor is there any proof that one ever existed. Nor is there any evidence of possession, or any claim of title by the town, in its corporate capacity.

Is the title to the island in the plaintiff? That it was in his *possession*, is not denied. And such possession is sufficient proof of title against a stranger. But various questions are presented, in other pleas, which render it necessary that we should determine the plaintiff's claim of title, in fact, to the premises in controversy. He has put into the case a series of instruments as muniments of his title, extending back to, the ancient colony charters from the crown.

The whole of New England is embraced within the patent granted to the Plymouth Colony by King James, in 1620, which extended from the fortieth to the forty-eighth degree of north latitude, " in length by all the breadth aforesaid, throughout the mainland, from sea to sea." This patent was afterwards confirmed by King Charles, in 1628. The Plymouth Colony subsequently granted to Sir Ferdinando Gorges a portion of their territory, extending from the entrance of Piscataqua harbor, northeastward, one hundred and twenty miles, including " all the islands and flats lying along the coast, within five leagues of the main." This grant was confirmed to Gorges by King Charles, in 1637, in the " charter of the Province of Mayne," recorded in the Registry of Deeds for the county of York, in 1640. That Vaughan's Island is within this grant admits of no doubt.

In 1643, Ferdinando Gorges, by Thomas Gorges, then " Deputy Governor of the Province of Mayne," conveyed certain premises claimed to embrace Vaughan's Island to one John Smyth. They are described as " one hundred acres of land, and one island, situate, lying, and being at Cape Porpoise, in length from northeast to southwest, and so up into the mainland on a northwest line, by all the breadth aforesaid, until one hundred acres are completed." The identity is denied by the defendant; but the fact that Vaughan's Island is one of the group near Cape Porpoise, is near the mainland, and has always been occupied with the farm adjacent on the mainland, is relied upon by the plaintiff to sustain this point. There are recitals, in some of the subsequent deeds, which strengthen the presumption for the plaintiff.

The deed of Gorges to Smyth appears to have subsequently come into the hands of one William Phillips, who claimed title under it, though without any written transfer to himself. He made a written assignment of it, under seal, to Bryan Pendleton, in 1666. The deed and the assignment were recorded in the registry of deeds, July 14th, 1680.

The records also show that Pendleton, in 1655, received a conveyance of the island from one Richard Ball, who appears to have been in possession of it, with the farm on the main land. In this deed it is called "Smyth's Island," and is said to contain "about fifty acres." There appears at that time to have been "edifices, or buildings" on the island, erected for the purpose of "fishing or making of fish thereon." The grantor in this deed claims to have derived his title, through mesne conveyances, from George Cleaves. That it related to the same premises conveyed to Smyth, cannot be doubted. Whether Cleaves claimed adversely to Smyth does not appear; nor is it material.

It appears also, that Cleaves conveyed three other islands at Cape Porpoise, in 1651, to one Gregory Jeffery, of whom Pendleton purchased them in 1658. These three islands are designated by name, and are said, in the deed of 1658, to be "the very next islands unto that which the said Bryan Pendleton formerly bought."

This deed is of no importance in this case, except in identifying the premises purchased by Pendleton of Ball and of Phillips. There is a clause in all of these deeds reserving a nominal rent to the original proprietors. But this cannot affect the title; as they all contain covenants of warranty, and are absolute grants, with no words of defeasance.

We are satisfied, from all the evidence, that Pendleton owned what is now called Vaughan's Island, in 1680, together with the farm adjacent, on the mainland. By his last will and testament the premises were devised to James Pendleton, who conveyed them, in 1681, to William Vaughan. They appear to have been, at that time, in the occupation of one Richard Palmer; and, in the subsequent conveyances, the island

has sometimes been called "Palmer's Island," but generally "Vaughan's Island."

The chain of title from 1681 is not distinct at every point. Various defects are suggested in some of the earlier conveyances, which would be serious if they were of recent date. But much is to be presumed in favor of ancient deeds, if accompanied by possession; and the same rule may be applied to wills, and to levies of executions, to some extent. The plaintiff invokes the maxim, *ex diuturnitate temporis omnia praesumuntur*, &c. This is not only a rule of evidence at common law; it has the force of legislative enactment in this case. It was not always possible to employ officers, or scriveners who understood all the requirements of the law; and "sundry persons, having just and equitable titles to estates, were in danger of being evicted out of their just rights and possessions, because the deeds, or instruments, or other writings conveying such estates, were defective, or imperfectly made and executed." An Act was therefore passed for "quieting possessions," which made such possessions, if continued until 1720, conclusive evidence of title. Province Laws, c. 49 and 115.

The plaintiff, in this case, claims under a warranty deed, duly acknowledged and recorded; and the claim of title by warrantors extends back from the plaintiff for a period of nearly sixty years. There is nothing to break the force of these conveyances, except the fact that the inhabitants of the town, and others, have always been in the habit of going upon the island, at their pleasure, and taking seaweed from it. But, upon the question of title to the soil, both in the flats and the upland, this custom by no means outweighs the record evidence, corroborated by the fact that the plaintiff, and those through whom he claims, have had possession, cultivating such parts of the land as have been suitable for that purpose.

It is argued for the defendant, with apparent seriousness, that if the plaintiff owns the upland, he has no title to the flats, but that the latter belong to the public. The reasons suggested for this position are, that the ordinance of 1641

does not apply to *islands*, nor to any other lands not conveyed by the original proprietors before that time. But such a distinction has no foundation in reason; the ordinance itself indicates no such intention; and the cases cited by the counsel do not sanction any such doctrines.

It is contended, however, that the defendant may justify under the following reservation contained in the deed to him, and in several of the deeds next earlier than his:—" reserving to the public any right that they may have to cross said island, and to take seaweed therefrom."

Such a clause is frequently, as a matter of caution, inserted in deeds of lands in which the public have no rights. Highways are usually reserved by similar language. But no one could justify under such a reservation, without showing a previous location, prescription, or grant. Such a reservation in a deed confers no rights, *proprio vigore*, upon any one. It merely saves the grantor, upon his covenant against incumbrances, from any liability if such rights have previously been granted or acquired. If not, it has no force whatever.

2. By the plaintiff's exhibit of title, it appears that, in 1797, the premises were owned by Ebenezer Perkins and his wife; and that he devised his interest to his wife, who conveyed the whole estate, by warranty deed, to other parties, under whom the plaintiff claims. And the defendant pleads, that said Perkins granted to the inhabitants of Kennebunkport, " by a good and sufficient deed, free license to go on said close and take seaweed," &c. There is no evidence of any grant or license such as is here pleaded. And if, under this plea, a parol license could be relied upon, there is no evidence of such a license that can avail the defendant. The case shows that Perkins, in his lifetime, permitted persons to take seaweed from the island, and that he supposed they had the right to do so. But, if he had been the sole owner, such a license could not be available for other persons, fifty years afterwards, against subsequent purchasers of the estate.

3. The defendant, in several other pleas, justifies as one of the public, and also as one of the inhabitants of Kennebunk-

port; and, in each capacity, by *custom*, and by *prescription*. And, in support of all or either of these grounds of justification, it is admitted, " that for more than seventy years, all persons who chose, living in Kennebunkport and elsewhere, have hauled seaweed *ad libitum* from the *locus in quo*, until forbidden by the present plaintiff in 1854 or 1855." If by this the public, or the inhabitants of the town, either by prescription, or by custom, have acquired any right that can be legally upheld, the plaintiff does not claim to recover. Or if such custom, with any other evidence in the case, establishes any prescriptive right in the town, in its corporate capacity, for the use of the inhabitants, the plaintiff cannot recover.

It appears by the evidence that large quantities of seaweed, a part of it growing on the beach, and a part of it floated by the tides from other localities, accumulate upon the flats of the island in controversy. These flats belong to the owner of the upland, as appurtenant to it. They may be conveyed without the upland, and thus the dominant and servient estates be severed. *Valentine* v. *Piper*, 22 Pick., 85. But the title to the seaweed is in the owner of the flats; and both together, unless there has been a severance, belong to the riparian proprietor. *Emans* v. *Turnbull*, 2 Johns., 313.

Title by prescription arises by a presumption, from long continued use of an incorporeal hereditament, of a previous grant, which has been lost. 3 Cruise, 467. Therefore nothing can be prescribed for that cannot be the subject of a grant. *Luttrel's case*, 4 Coke's R., 86. For the same reason, whatever can be acquired by grant, may be acquired by prescription. The owner of the whole estate to which flats are appurtenant, may convey the right to take seaweed, without conveying the soil, even of the flats. *Phillips* v. *Rhodes*, 7 Met., 322. Such a right is an incorporeal hereditament, and may be acquired by prescription. 3 Kent, 401.

Such a right may be *personal*. A man may claim it by long

continued enjoyment, by himself and his ancestors, or grantors. The defendant does not claim upon this ground.

Or one may claim it as appurtenant to some particular estate, described in the plea, of which he is the owner. This is pleading it with a *que estate.* 2 Greenl. Ev., 540. No such right is sufficiently pleaded by the defendant; and, if it had been, there is no proof to sustain it.

If a prescriptive right is not *personal*, it must be a *corporate* right, under which any member of the corporation may justify. Coke Litt., 113, *b.* Such a right, in the town of Kennebunkport, the defendant claims by his pleadings. If sustained by the evidence, the justification would be good. But a lost grant to the corporation can be presumed only from corporate acts. The use by individuals is no sufficient basis for the presumption. *Green* v. *Chelsea*, 24 Pick., 71.

There is no evidence that the town of Kennebunkport, in its corporate capacity, ever claimed the right to take seaweed from Vaughan's Island. There is no record of any corporate act regulating any such right, or exercising any control over it. The vote of 1724, that "the islands should lay common forever, for the use of the inhabitants," if it was intended to embrace this island, can avail nothing against those who now establish a good title to the soil. The survey of a lot to John Mussey, in 1723, was not followed by occupation, or possession, or claim of title, by him, or by the town. The location of the town way to the island was no assertion of any corporate interest, in this, any more than in other cases of location of public ways.

The fact that the inhabitants have always been accustomed to take seaweed from the premises, is set forth by the defendant in nearly all his pleas, and is relied upon by his counsel in support of all his positions. It was held, in the case of *Sale* v. *Pratt*, 19 Pick., 191, that such a custom by the inhabitants created no presumption of a lost grant to the corporation. If we should hold otherwise, there is another difficulty in this case. This custom has not been confined to the

inhabitants of Kennebunkport. It is suggested that the greater includes the less; but this is no answer. For, as title to lands by disseizin can be acquired only by an *exclusive* occupation, so a title to an incorporeal hereditament, unless an easement merely, can be acquired only by an *exclusive* enjoyment. The free participation of the public in it, rebuts any presumption of private or corporate right. Coke Litt., 110, *b; Muston* v. *Yateman,* 10 Mod., 301; *Commonwealth* v. *Low,* 3 Pick., 408.

It is claimed, however, that if there was no prescriptive right in the town, in its corporate capacity, the *inhabitants* had acquired such a right *for themselves.* But, if such a right is an interest in, or right to a profit in the soil, and not a mere easement, this ground of justification fails. For, though a person, or a corporation, may prescribe for such an interest, it was held, as long ago as the case of *Foxall* v. *Venables,* Cro. Eliz., 180, that the *inhabitants* cannot prescribe for a profit in the soil. This doctrine was affirmed four years later, and the satisfactory reason given, that there could be no presumption of a grant, "for an inhabitant cannot purchase to himself and his successors." *Fowler* v. *Dale,* Cro. Eliz., 363. The old books abound in cases to the same point. *Fowler* v. *Landers,* Cro. Jac., 446; *Whittier* v. *Stockman,* 2 Bulstrode, 86; *Weekly* v. *Wildman,* Lord Raym., 405.

The inhabitants of a town, or of a State, could acquire such a right by *custom,* if it were an *easement* only, and not an interest in the land. *Baker* v. *Brereman,* Cro. Car., 419; *Coolidge* v. *Learned,* 8 Pick., 504. The case of *Smith* v. *Gatewood,* Cro. Jac., 152, more fully reported as *Gateward's case,* 6 Coke, 60, is usually cited as the leading case on this point. The distinction was there made, and has since been recognized as an established principle of law, that, though *custom* may support a claim for an *easement,* nothing less than *prescription* can sustain a claim for a profit *a prendre in alieno solo.* The owner of the fee can be divested of it only by a grant from himself, or by such enjoyment in another as raises the pre-

sumption of a previous grant. *Cocksedge* v. *Farnshaw*, Doug., 126; *Grinstead* v. *Marlow*, 4 T. R., 717; *Littlefield* v. *Maxwell*, 31 Maine, 134.

The case at bar, therefore, turns upon the question, whether the right to enter upon the flats of another, and take seaweed therefrom, is an interest in, or a right to take a profit in, the soil.

That seaweed belongs to the owner of the soil upon which it grows, or is deposited, unless some other person has *acquired* the right to take it, the defendant admits. But he contends that it is not a part of the soil, nor a product of it where deposited; and that the right to take it is, therefore, no interest in the soil. It is said, and perhaps correctly, that if not taken away it does not become incorporated with the soil, but that much of it is washed away by the same tides that bring it to the shore.

The distinction between an interest in the soil, or a right to a profit in it, and an easement, is not always palpable. The line of separation is sometimes obscure, in some points unsettled, with no established principles by which to determine it.

All rights of way are easements. So is the right to enter the close of another and erect booths upon public days; or to dance, *Abbott* v. *Weekly*, 1 Lev., 176; or to play at any lawful games and sports, *Fitch* v. *Rawling*, 2 Hen. Bl., 393.

Aquatic rights, of whatever kind, when held by those not owning the soil, are considered easements. 3 Kent, 427. The numerous water privileges, and industrial enterprises of New England, have originated questions of this kind, in great variety. The same principle is found in the English cases. Thus, the right to enter upon the close of another, and take water for domestic purposes, from any *natural* fountain, as a pond, *Manning* v. *Wasdale*, 5 A. & E., 758, or a running spring, *Race* v. *Ward*, 82, E. C. L. 700, has been held to be an easement only, sustainable by proof of custom by the inhabitants. The grounds upon which these decisions rest, are, that running water is not a product of the soil, whether above

or below the surface; and that it does not remain for any appreciable period of time in any one place. The Courts, in these cases, expressly affirm that the right to water in wells, or cisterns, would be an interest in the land, or a right to a profit *a prendre*.

The right to enter upon the lands of another for any of the following purposes has been held to be a right to take a profit in the soil;—to cut grass, Viner, Tit. Prescription; for pasturage, Cro. Eliz. 180, 363; for the purpose of hunting, *Pickering* v. *Noyes*, 4 B. & C., 639; *Wickham* v. *Hawker*, 7 M. & W., 63; or for fishing in an unnavigable stream, *Waters* v. *Lilley*, 4 Pick., 145. So also to take away drifting sand from the beach, *Blewett* v. *Tregonning*, 3 A. & E., 554; or to pile wood and lumber thereon, for the purpose of sale and shipment, *Littlefield* v. *Maxwell*, 31 Maine, 134.

So far as any general rule can be deduced from these cases, they tend to the conclusion that the right to take seaweed is a right to take a profit in the soil. It does not come within the principles applied to aquatic rights. The subject of it is, in part, a product of the soil where it is found. And, in regard to that portion which is washed ashore by the tides, though not permanently remaining, the right which the owner of the flats has to it is much more analagous to the *jus alluvionis* of riparian proprietors, than to the right of appropriating waifs or derelict goods, to which it is compared by the counsel for the defendant. "It may be considered," says KENT, C. J., in *Emans* v. *Turnbull*, before cited, "as one of those marine increases arising by slow degrees; and by the rule of the common law, it belongs to the owner of the soil. The *jus alluvionis* ought in this respect to receive a liberal encouragement in favor of private right."

Upon a careful consideration, we are satisfied that a right to take seaweed is not an easement, but is a right to take a profit in the soil; that neither the inhabitants of a town, nor the public, can acquire any right to it by custom; and that the evidence in this case does not establish any prescriptive right to it in the defendant himself, nor in the town of Ken-

nebunkport in its corporate capacity. According to the agreement of the parties, a default must be entered, with judgment for the plaintiff for the sum of twenty-five dollars, with costs.

TENNEY, C. J., and APPLETON, RICE and KENT, JJ., concurred. GOODENOW, J., dissented.