REUBEN ANTHONY *vs.* ALLEN GIFFORD.
SAME *vs.* GEORGE GIFFORD.

Sea-weed between high and low water-mark, which has not been deposited on the shore, and which during flood tide is moved by each rising and receding wave, is adrift, within the meaning of Gen. Sts. *c.* 83, § 20, although the bottom of the mass may touch the beach.

TWO ACTIONS OF TORT for the conversion of sea-weed, which had been collected by the plaintiff on a beach adjoining land from which the defendants claimed the right in gross to take sea-weed, and removed by him to a point above high water-mark.

The cases were tried together in the superior court, and the evidence as to the position of the sea-weed, when collected by the plaintiff, was conflicting; but it was agreed that it was between high and low water-mark, and that it was taken during the flood tide; and *Lord*, J. ruled that if, during flood tide the sea-weed was in · such a position that each rising and receding wave moved it, it was adrift, although the bottom of the mass might touch the beach.

Upon this ruling, and others, the exceptions to which were afterwards waived, verdicts were returned by consent for the plaintiff, and the cases were reported to this court.

*T. M. Stetson*, for the plaintiff.

*C. I. Reed*, for the defendants.

BIGELOW, C. J.   Of the exceptions taken to the rulings of the court at the trial of these cases, only one is now insisted on. The defendants contend that the definition given to the word " adrift," as used in Gen. Sts. *c.* 83, § 20, in its application to the

facts in proof, was erroneous. But it does not appear so to us. The word is to be construed with reference to the subject matter in relation to which it is used. By a liberal construction of the *jus alluvionis*, it is held that sea-weed, kelp and other marine plants, when detached from the bottom of the sea and thrown on the shore or beach, become vested in the owner of the soil. But these marine products do not become the property of the riparian proprietor until they are cast on the land or shore, so that they rest there and may be justly said to be attached to the soil. So long as they are afloat and driven or moved from place to place by the rising tide, it is wholly uncertain where they may find a resting-place; and no one can claim ownership in them as appertaining to the particular part of the shore or beach which belongs to him. And this is true, whether they are wholly afloat so that they do not come in contact with the bottom, or only partially so, or to such an extent that they occasionally, by the motion of the waves or the rise of tide, touch or rest on the beach. *Chapman* v. *Kimball*, 9 Conn. 38. *Emans* v. *Turnbull*, 2 Johns. 313, 321. *Phillips* v. *Rhodes*, 7 Met. 322. Angell on Tide Waters, 260. It was clearly the intention of the legislature, by the provisions in the statute above cited, to give to any person the right to take and carry away kelp or other sea-weed, which had not actually rested or been deposited on the shore or beach, and thereby become vested in the riparian proprietor. Such we understand to have been the condition in which that taken by the plaintiff was found, when it was carried off by him. We are therefore of opinion that the ruling of the court was sufficiently full and well adapted to the case. If the jury found, that the sea-weed was in the condition described by the language used by the court, and had never become vested in the defendants by having been cast on land belonging to them, under the colony ordinance of 1647, between high and low water-mark, the plaintiff was justified in taking it under the authority conferred by the statute.          *Exceptions overruled.*