STATE OF MAINE

WASHINGTON, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO.SC-CV-15-022

KENNETH W. ROSS, CARL E. ROSS )
and ROQUE ISLAND GARDNER )
HOMESTEAD CORPORATION )
              Plaintiffs )
vs. )
 )
 )
ACADIAN SEAPLANTS, LTD )
              Defendant )

ORDER on
CROSS-MOTIONS
for
SUMMARY JUDGMENT

Kenneth W. Ross, Carl E. Ross and Roque Island Gardner Homestead Corporation (collectively Plaintiffs) and Acadian Seaplants, LTD (Defendant or Acadian Seaplants) have filed Cross-Motions for Summary Judgment. The parties submitted their motions on a Joint Statement of Material Facts. At issue is whether rockweed, a form of seaweed, growing on private intertidal property is private property or a marine product owned by the State in trust for the public.

FACTS

Plaintiffs own coastal property, including intertidal property, on Cobscook Bay and Chandler Bay in Washington County. JSMF ¶¶1-3. Rockweed growing in the tidal waters attached to the intertidal properties of the Plaintiffs has been harvested and carried off by Defendant, without Plaintiffs' consent, within the past six years. JSMF ¶¶8-10. Defendant harvested the rockweed from watercraft floating in the waters above Plaintiffs' intertidal land where rockweed grows without actually walking or travelling upon Plaintiffs' land. JSMF ¶¶ 6-7. Harvesting was typically done during mid-tide when the rockweed was floating vertically. Id. Harvested rockweed is used in fertilizer and animal feed products. JSMF ¶ 5. Rockweed used as a form of fertilizer is often referred to as "sea manure." JSMF, Ex.1, p. 462.

Rockweed is the common name for a species of brown intertidal seaweed, known as *Ascophyllum nodosum* and is found on the rocks and ledges of the coast. JSMF ¶ 11. Rockweed does not grow on intertidal sandy beaches but rather on hard objects such as rocky substrates, including rocks, stones and logs. The rockweed attaches to rocky substrates by a "holdfast" which penetrates the bedrock by up to four millimeters. JSMF ¶¶12-14. Once attached by the holdfast, rockweed does not move, but if broken or detached, the rockweed will either float on the ocean or be cast upon the shore. JSMF¶

1

15. The holdfast's sole purpose is to keep the rockweed in place and is not a means to extract nutrients from the ground. JSMF ¶ 16. Instead, rockweed receives nutrients from the sea, and absorbs $CO_2$ from the air and seawater. JSMF ¶ 18. Under normal conditions rockweed generally grows between two and four feet tall when standing vertical in high tide, but can grow to over six feet tall. JSMF ¶ 13.

Rockweed beds are ecologically important. They provide cover and a habitat for multiple organisms, help to moderate temperature in the sea, and are a source of nutrients to the marine ecosystem. JSMF ¶¶19, 23-24. Each year, rockweed will release a portion of its biomass due to natural effects of the environment. But the holdfast, if not severely damaged, can remain intact and attached for decades, allowing the plant to generate new growth. JSMF ¶ 23.

And rockweed plants reproduce. Male rockweed plants release free-floating sperm and female rockweed plants release eggs. Once an egg is fertilized, the embryo will attempt to attach to rocky substrate. Once it does, the rockweed remains a stationary, perennial species for the remainder of its life. In undisturbed locations, it can survive for decades. JSMF ¶ 20.

Harvesting of rockweed is regulated by the State, including harvesting locations or sectors, amounts and heights. JSMF ¶¶26-27. A license is required to commercially harvest rockweed in the State of Maine. JSMF ¶ 28.

DISCUSSION

1. Is the right to take seaweed a profit or an easement?

Analysis of this case must begin with a discussion of *Hill v. Lord*, 48 Me. 83(1861). That case was a trespass case in which the defendant took seaweed from the shore of land established to be the property of plaintiff, including the flats which belong to the owner of the upland, as appurtenant to it. From the evidence discussed, large quantities of seaweed, a part of it growing on the beach, and a part floated by the tides from other localities, accumulated upon the flats. *Id. at 96.* The Court held "..the title to the seaweed is in the owner of the flats; and both together, unless there has been a severance, belong to the riparian owner. *Id., citing Emans v. Turnbull, 2 Johns.313.*

The decision in *Hill v. Lord* turned on the question whether the right to take seaweed was a right to take a profit in the soil or an easement. Upon considering other precedent, the Court noted:

> *So far as any general rule can be deduced from these cases, they tend to the conclusion that the right to take seaweed is a right to take a profit in the soil. It does not come within the principals applied to aquatic rights. The subject of it is; in part, a product of the soil where it is found. And, in regard to that portion which is washed ashore by the tides, though not permanently remaining, the right which the owner of*

2

*the flats has to it is much more analogous to the jus alluvionis of riparian proprietors,[1] ...*

The *Hill v. Lord* Court ruled the right to take seaweed is not an easement, but is a right to take a profit from the soil, which in that case belonged to the owner of the flats. This distinction is important.

As Defendant acknowledges, the right to products of the soil is an alienable right described as a "profit a prendre", which is the right to take from another's land a part of the soil or of the products of the soil. *Maine Practice Series, Maine Real Estate Law and Practice, 2nd Edition, §8:2; See also Beckwith v. Rossi, 175 A.2d 732 (Me. 1961).* Examples include the right to cut and take away trees, to remove sand, gravel or soil or quarry granite. *Id.*

2. The Public Trust Doctrine

Switching to the Public Trust Doctrine and easements, by common law, reserved out of the fee title of the upland owner is a public easement for fishing, fowling, and navigation. *Bell v. Wells, 557 A.2d 168, 173(Me. 1989).* The terms fishing, fowling and navigation have been allowed "sympathetically generous interpretations". *Id.* But the Court has never decided a question of the scope of the intertidal public easement without referring to the three specific public uses of fishing, fowling or navigation. *Id.* [2] However a review and application of the doctrine from *McGarvey v. Whittredge*, 2011 ME 97 is necessary.

*McGarvey* does indeed clarify, and shift away from a strict approach that the public's rights of use in the intertidal zone be a form of fishing, fowling or navigation. *McGarvey* at ¶¶53-57. Those three terms provide context, but it should not be understood that they exclusively define the scope of public rights. *Id,* ¶¶ 56-57. Instead, the better approach is to ask two questions. *Id.* at ¶49.

First, does the activity fall readily within the aquatic rights of "fishing, fowling or navigation?" *Id.* If so, no further questions are required. *Id.* This court does not find harvesting a plant such as rockweed to be a form of any of the three identified activities. Harvesting a terrestrial plant is no more a fishing activity, such as worming, digging for mussels, trapping lobsters or dropping a line for fish clearly are, than is harvesting a tree the same as hunting or trapping wildlife. Rockweed is a terrestrial plant. JSMF §§11,12,15,16,20. The harvesting of rockweed cannot be said to be a form of fishing, fowling or navigating.

---

[1] Regarding "that portion which is washed ashore..", the Court's interpretation is this washed ashore seaweed was in addition to other seaweed on the property, based on the reference in the evidence at page 96 of large quantities of seaweed, a part of it growing on the beach, and a part of it floated by the tides.

[2] Interestingly, in *Bell v. Wells*, in his dissent arguing for greater public recreational rights, Justice Wathen noted "..we have prohibited the taking of seaweed from the flats of another. "The title of the seaweed is in the owner of the flats..."*Hill v. Lord*, 48 Me. 83,86(1861).

So we proceed to the next question suggested by *McGarvey*- whether the common law of *jus publicum* should be understood to include the activity, here the harvesting of rockweed from the ocean bed in the intertidal zone. *Id.*

*McGarvey* suggests that in answering the second question a reasonable balance be struck between private ownership of the intertidal lands and the public's use of those lands. By way of example, common law has included in the public easement the right to shellfish and dig for worms, but does not include the right to take mussel bed manure or cutting of ice. *McGarvey* at ¶¶ 39-40.However, in addressing such a question, it is noted that all of the case law describes the private owner's title to the intertidal zone as in *fee*. See *Bell* at p. 173; *McGarvey* at ¶16, 32. It remains that for the public to have a right it still must derive from some form of easement right or *jus publicum*. *Id.* It is the court's view that the answer to this second question takes us back to *Hill v. Lord.*

Aquatic rights, of whatever kind, when held by those not owning the soil, are considered easements. *Hill* at p.99. As previously discussed, the Court in *Hill* ruled the right to take seaweed is a right to take a profit in the soil; it is not an easement. *Id.* Applying the test from *McGarvey*, the court does not find that common law should be understood to include the activity of harvesting rockweed.

In Maine, unless previously severed, the owner of coastal property also holds fee title to the land that is exposed between high tide and low tide, but not beyond a distance of 100 rods. *Bell at 172.* Defendant does not challenge Plaintiffs' ownership in this intertidal zone. JSMF §§ 1-3, 8-10. Based on *Hill v. Lord* the rockweed growing on Plaintiffs' intertidal property is a profit that belongs to Plaintiffs, and not subject to a public easement.


3. Title 12 definition of fishing.

The Defendant has also referenced the definition of "fishing" found in Title 12. Notwithstanding that harvesting rockweed could come within the definition of "fishing" utilized by the Department of Marine Resources (DMR), 12 M.R.S. § 6001, et. seq., those statutes are in place to regulate and conserve marine resources. See §6021. The statutory framework by which DMR regulates marine resources has no place in determining property rights, including public easements, which are typically determined by common law.

4. *Hill v. Lord* has not been overruled.

In opposition to *Hill v. Lord*, Defendant relies significantly on *Marshall v. Walker*, 93 Me. 532 (1900), asserting it overruled *Hill v. Lord* and is controlling of this case. *Marshall v. Walker* was a quiet title case. Consistent with legal precedent previously discussed, the Court in *Marshall* noted that the proprietor of the main holds the shore to low water not exceeding one hundred rods; he holds it in fee, like other lands, subject, however to the *jus publicum*, the right of the public to use it for purposes of navigation and of fishery. *Id.* at 536. Regarding the *jus publicum* rights, the Court also stated "Others may sail over them, may moor their craft upon them…may fish in the water over them, may dig shell fish in them, may take sea manure from them, but may not take shells or mussel manure or deposit scrapings of snow upon the ice over them. *Id.* It is not clear

4

what the Court was referencing when it listed "sea manure". Setting aside momentarily consideration of "sea manure", the list of allowed and disallowed activities as a *jus publicum* right is largely but not entirely accurate. There is no dispute that by *jus alluvionis*, seaweed or sea manure washed upon the shore of a fee owner belongs to the fee owner, just as shells and mussel manure belong to the fee owner, notwithstanding the *Marshall's* Court failure to include it in its list of disallowed activities. See *Moore v. Griffin*, 22 Me. 350 (1843). So what regard to give to the *Marshall* Court's inclusion of taking sea manure as a *jus publicum* right is difficult to reconcile. But it seems a stretch to suggest *Marshall v. Walker* overruled *Hill v. Lord*.

As Plaintiffs have pointed out, the decision in *Marshall* does not even reference *Hill v. Lord*, let alone overrule it. The doctrine of *stare decisis* is the historic policy of our courts to stand by precedent and not disturb a settled point of law. *McGarvey v. Whittredge*, 2011 ME 97, ¶ 63. Even with a certain "unease" with the analysis of a prior decision, the Courts will not overrule the decision without a compelling and sound justification. *Id.* This is particularly at its apex with regard to judicial precedents that exposit property rights. *Id.* at ¶ 64. The Courts proceed with great care before overruling a prior decision, and do so only after careful analysis and based on a compelling reason. *Alexandre v. State*, 2007 ME 106, ¶35. Without even mentioning the *Hill v. Lord* decision or identifying any compelling reasons, it is improbable that the Court in *Marshall* was overruling *Hill v. Lord*. The decision in *Hill v. Lord* turned on the issue whether the right to take a seaweed was a right to take a profit in the soil or an easement. *Marshall* never addressed those issues.

5. *Anthony v. Gifford* Distinguished

Lastly, regarding the concept of *jus alluvionis* and its argument that the fee owners interest in sea weed applies only to seaweed once washed upon the shore, Defendant cites *Anthony v. Gifford*, 84 Mass. 549, (1861). But the impact of that decision must be restricted to what it states. In *Anthony v. Gifford*, the Massachusetts Court held that by jus alluvionis:

> "..sea weed, kelp and other marine plants, when detached from the bottom of the sea and thrown on the shore or beach, become vested in the owner of the soil. But these marine products do not become the property of the riparian proprietor until they are cast on the land or shore....So long as they are afloat and driven or moved from place to place by the rising tide, it is wholly uncertain where they may find a resting place; and no one can claim ownership in them.." *Id.*

The Massachusetts Court provided no precedent regarding seaweed still affixed to the rocks on the intertidal bed. Its holding is of precedent only for seaweed washed upon the shore or still adrift, and does not have persuading impact on *Hill v. Lord*.

In conclusion, the court finds that rockweed/seaweed growing in the intertidal zone is private property owned exclusively by the fee owner, and is not owned by the State in trust for the public. Plaintiffs' Motion for Summary Judgment is granted; Defendant's Motion for Summary Judgment is denied.

5

The clerk shall incorporate this Order in the docket by reference pursuant to M.R.Civ. P. 79(a).

Dated: March 14th, 2017

Justice, Superior Court

6